**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| **BENNIE FRANK LEWIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )          **Case No. 3:20-cv-586-CWB** |
| | ) |
| **KILOLO KIJAKAZI,[1]** | ) |
| **Acting Commissioner of** | ) |
| **Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction and Administrative Proceedings

Bennie Frank Lewis ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on April 13, 2017 wherein he alleged a disability onset of April 30, 1990 due to back pain, lumbar strain, and schizoaffective disorder. (Tr. 30, 59-60, 69-70, 318).[2]  Plaintiff's claims were denied at the initial level on June 2, 2017 (Tr. 30, 69, 82), and Plaintiff requested *de novo* review by an administrative law judge ("ALJ") (Tr. 30, 88).  The ALJ subsequently heard the case on July 17, 2019.  (Tr. 30, 51-57).  The ALJ took the matter under advisement and issued a written decision on August 9, 2019 that found Plaintiff disabled under Title XVI beginning April 13, 2017 but denied that Plaintiff had been disabled as of his date last insured.  (Tr. 30-43).

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 1992.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Prior to April 13, 2017, the date the claimant became disabled, the claimant had the following medically determinable impairments: degenerative disc disease, diabetes, hypertension, obesity, carpal tunnel syndrome, depressive disorder, personality disorder, alcohol dependence (non-material), and distal fibular fracture and fourth finger fracture (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*). However, the claimant did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. Beginning on April 13, 2017, the claimant has had the following severe impairments: obesity, bilateral carpal tunnel syndrome, depression, personality disorder, hypertension, type II diabetes mellitus, status post distal fibular fracture, and degenerative disc disease of the cervical and lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

5. Since April 13, 2017, the claimant has not had an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

6. After careful consideration of the entire record, the undersigned finds that since April 13, 2017, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday. He can sit with normal breaks for a total of about 6 hours in an 8-hour workday. He can frequently use his upper extremities bilaterally for pushing/pulling (including the operation of hand controls). He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. He can frequently balance, occasionally stoop, kneel, crouch, but never crawl. He can frequently use his upper extremities bilaterally for reaching in all directions, reaching overhead, handling, and fingering. He has no limitations

feeling. He has no visual or communicative limitations. Environmentally, he should avoid concentrated exposure to the extreme cold, wetness, and Level 5 Noise in the Dictionary of Occupational Titles. He should avoid all exposure to hazards, such as dangerous machinery and unprotected heights. He should do no commercial driving.   He has no restrictions with heat, humidity, or pulmonary irritants, such as fumes, odors, dust, gases, and poor ventilation. Mentally, he can frequently interact and respond appropriately with supervisors and coworkers. He can occasionally interact and respond appropriately with the general public. He can respond appropriately to work pressures in a usual work setting and changes in a routine work setting if gradually introduced. He can use judgment for simple 1-2 step work-related decisions. He can occasionally use judgment in detailed or complex work-related decisions. He can understand, remember, and carry out simple 1-2 step instructions, but occasionally detailed or complex instructions.

7. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was an individual of advanced age on April 13, 2017, the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

11. Since April 13, 2017, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. The claimant was not disabled prior to April 13, 2017, (20 CFR 404.1520(c) and 416.920(c)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

13. The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 1992, the date last insured (20 CFR 404.315(a) and 404.320(b)).

14. The claimant's substance use disorders is not a contributing factor material to the determination of disability (20 CFR 404.1535 and 416.935).

(Tr. 33, 38, 39, 41, 42).

On June 12, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 21-25), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the  Commissioner's final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.  (Doc. 1).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 8, 9), and the undersigned finds that the case is now ripe for determination pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.     Standard of Review and Regulatory Framework

The court's review is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Despite the deferential nature of its review, the court must

4

look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). However, reversal is not warranted simply because the court would have reached a contrary result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there is a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of the factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

---

[4] Although *McDaniel* is a SSI case, the same sequence applies to claims for disability insurance benefits brought under Title II.  SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

### III.    Issue on Appeal

Plaintiff argues that the ALJ was erroneous in finding that he was not disabled prior to April 13, 2017.  (Doc. 1).  The Commissioner does not contest the ALJ's finding that Plaintiff was disabled under Title XVI beginning on April 13, 2017 but argues that Plaintiff was not disabled prior to April 13, 2017 for purposes of his Title II claim.  (Doc. 20 at p. 2, n.4).

### IV.    Discussion

#### A.    The ALJ's Finding that Plaintiff was not Disabled as of June 30, 1992

"A claimant must have insured status based on employment earnings in order to qualify for disability and DIB."  *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134, at *1 (11th Cir. June 1, 2022).  To be eligible for disability insurance benefits, "a claimant must demonstrate a disability on or before the last date on which he was insured."  *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured status[.]").  "A claimant who becomes disabled after [he] loses insured status must be denied disability insurance benefits despite h[is] disability. *Thomas-Joseph*, 2022 WL 1769134, at *1 (citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).[5] Because Plaintiff's date last insured was June 30, 1992 (Tr. 31, 33), his claim for disability insurance benefits  requires a showing of disability on or before that date.  *See Moore*, 405 F.3d at 1211.[6]

---

[5] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding in the Eleventh Circuit).

[6] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file."  *Moore*, 405 F.3d at 1211; 20 C.F.R. §§ 416.202-03.  As Plaintiff applied for SSI payments on April 13, 2017, her SSI appeal requires a showing of disability

The Commissioner contends that Plaintiff failed to provide evidence to show that he was under a disability on or before June 30, 1992.  Specifically, the Commissioner contends that Plaintiff failed to show that his impairments were severe impairments on or before June 30, 1992 and that substantial evidence supports the ALJ's findings at step two.  (Doc. 20 at p. 5).

"[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The Agency] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921.  An impairment or combination of impairments is "severe" if it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities"[7] and persists for at least twelve consecutive months. 20 C.F.R. §§ 404.1520(c) and 416.920(c); 404.1505(a) and 416.905(a).  "[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933, at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Plaintiff bears the burden of proving that an impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

---

between that date and the date of the ALJ's decision on August 9, 2019. *Id*.; 20 C.F.R. §§ 416.330, 416.335.  The Commissioner does not contest Plaintiff's award of SSI benefits from April 2017. (Doc. 20 at p. 2, n.4).

[7] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR §§ 404.1522(b), 416.922(b).

"Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, which acts as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "If the ALJ finds a claimant does not have a 'severe' impairment or combination of impairments, she should conclude the claimant does not have a disability." *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017). In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Id*. When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).

At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. *Id*.; 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC. *Tuggerson-Brown*, 572 F. App'x at 951-52. Importantly, however, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore*, 405 F.3d at 1213 n.6.

Here, the ALJ's opinion stated that, in finding that Plaintiff did not suffer a severe impairment prior to the filing of her applications on April 13, 2017, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (Tr. 34). The ALJ further stated that "the evidence does not support

9

that these impairments are severe prior to April 13, 2017, since most of his impairments responded adequately to medical treatment" and that "[o]verall, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record prior to April 13, 2017." (Tr. 34). The ALJ explained that "[a]lthough the objective record indicates diagnoses for these conditions, the evidence clearly shows that individually these impairments cause no more than slight limitation in the claimant's ability to perform basic work activities, as they are managed effectively with medication treatment and medical care or they are temporary in nature with symptoms not lasting for 12 months or longer." (Tr. 34). The ALJ then extensively discussed the medical evidence in relation to Plaintiff's medically determinable impairments prior to his April 13, 2017 applications for benefits. (Tr. 35-37).

With regard to Plaintiff's alleged degenerative disc disease, the ALJ noted that Plaintiff received conservative treatment for his symptoms and that the objective evidence supported no more than mild limitations. (Tr. 35). The ALJ specifically found that the objective medical evidence revealed the following:

> In November 2012, the claimant had lumbosacral x-rays that revealed a "**mild** lumbar instability and **mild** lumbosacral levoscoliosis" and "**mild** spondylosis" with "**mild** degenerative facet joints at T12-Ll. The primary diagnostic code showed a "*minor abnormality*" (Exhibit BlF /31). Radiographic images showed the claimant had "**stable** levoscoliosis and **mild** chronic degenerative disease in the lower lumbar spine" in August 2014. A MRI of the lumbar spine at the Veterans Administration showed the claimant had advanced lower predominant facet arthropathy of the lumbar spine with "**milder degenerative disc disease**" and "**mild**" foraminal narrowing with "**no** levels of significant canal stenosis" and "**mild**" levoconvex lumbar scoliosis (Exhibit BlF/14). Prior imaging from the Veterans Administration revealed "**stable**" levoscoliosis and "*mild* chronic degenerative change in the lumbar spine" (Exhibit BlF). The claimant had a MRI in February 2016 at the Veterans Administration that revealed degenerative changes in the cervical spine with a "**mild**" reversal of the <u>normal cervical lordosis at C6</u>. The findings showed the claimant had narrowed disc spaces from C4-7 with "**marginal**" osteophytes, but the <u>other disc spaces were preserved</u>. The findings

showed the claimant had bilateral neural foraminal narrowing at C4-5, but the bone mineralization and Cl-2 relationship were <u>normal.</u> The primary diagnostic code showed a "*minor abnormality.*" (Exhibit B1F/5). In addition, electrophysiological findings showed "no evidence of cervical radiculopathy" (Exhibit B1f/607). The claimant was treated with prescription treatment and physical therapy exercises were recommended. No surgery was recommended and the objective evidence generally showed mild findings.

(Tr. 35, 545, 554, 559, 571, 1012, 1147, 1190, 1193, 1447, 1735) (emphasis in original).

As to Plaintiff's type II diabetes mellitus, the ALJ noted that Plaintiff received routine treatment at the Veterans Administration for this condition.  (Tr. 35).  The ALJ found the following in that regard:

The claimant was prescribed Metformin and many diagnoses at the Veterans Administration noted the claimant's condition was "**without complications**." Foot sensory exams were "**normal**" and there was <u>no</u> evidence of renal disease, retinopathy, or neuropathy related to his diabetes condition (Exhibit B1F). In fact, at an office visit on February 26, 2016, the claimant's diabetes condition was considered under "**good control**" (Exhibit B1F/398).

(Tr. 35, 939) (emphasis in original).

The ALJ also noted that Plaintiff was treated at the VA for hypertension, but that he did not exhibit a cardiovascular event or renal failure:

He received only traditional prescription medication treatment for his symptoms. He was also advised to follow a low sodium diet. The claimant was diagnosed with "benign essential hypertension," in June 2016, which is generally consistent with a nonsevere impairment (Exhibit B1F/177). Physical exam findings over the course of care revealed several normal blood pressure readings, such as 110/78, 115/83, and 128/89 (Exhibit B1F/170, 327, and 340). In addition, records from the Veterans Administration showed the claimant's hypertension was "**well controlled**" on current medications (Exhibit B1F/172).

(Tr. 35) (emphasis in original).

With regard to Plaintiff's obesity, the ALJ noted that Plaintiff was diagnosed with obesity and advised about nutrition and associated conditions with regard to the impairment.  (Tr. 36). However, the ALJ found that there was no evidence indicating that Plaintiff's obesity produced

greater than mild limitations in functioning:

> The claimant's body mass index in November 2015 was 31.5, which is slightly over the minimum classification for obesity of 30.0 or greater (Exhibit B1F/340). He was advised to lose weight, drink more water, and eat more fiber (Exhibit 1F). He was referred to a weight management class in the "MOVE" program. The record reveals a history of obesity and the claimant has no significant limitation related specifically to this condition as evidenced in the record prior to April 13, 2017. The undersigned has fully considered Social Security Ruling 19-2p with respect to this impairment prior to April 13, 2017. Overall, the record supports no more than minimal limitations related to this impairment prior to the established onset date (Exhibit 1F).

(Tr. 36).

With regard to Plaintiff's carpal tunnel syndrome, the ALJ noted that the VA diagnosed him for that condition, but that the electrophysiological findings showed only evidence of "**mild**" carpal tunnel syndrome involving the right upper extremity.  (Tr. 36) (emphasis in original).  In addition, the ALJ stated that studies showed no evidence of peripheral neuropathy and that Plaintiff "*was treated only with a trial of 'splinting,' a steroid, and anti-inflammatory medication*." (Tr. 36, 1147, 1560) (emphasis in original).

In discussing Plaintiff's fractures, the ALJ found the following:

> X-rays of the left ankle on March 10, 2016 showed a "**healing** distal fibular fracture," as a periosteal reaction and effort towards healing was seen. The "remainder of the claimant's bones (were) intact" and the ankle mortise was symmetric, only soft tissue edema was noted at this time (Exhibit B1F/1). The claimant was treated conservatively for his fractures with a compression dressing, boot, crutches, and pain medication. He wore the boot for three weeks as instructed and the records showed "*it helped*." The claimant returned to "*normal walking shoes*" (Exhibit lF/661). The claimant also exhibited hand pain and a fracture of the fourth proximal phalanx was noted in February 2016. X-ray findings of the claimant's left fourth finger revealed an "unchanged intra-articular fracture" at the base of the fourth proximal phalanx (Exhibit B1F/2). He received treatment with a splint and pain medication treatment.  There was no surgery indicated for this condition. The claimant's fractures were treated conservatively and there is no indication of more than minimal and temporary limitations related to these conditions.

(Tr. 36) (emphasis in original).

With regard to Plaintiff's mental impairments of depressive disorder, personality disorder, and alcohol dependence, the ALJ found that there were diagnoses for these conditions but that Plaintiff's symptoms and impairments produced no greater than mild limitations.  (Tr. 36). Specifically, in the area of "understanding, remembering, or applying information," the ALJ found that Plaintiff had a mild limitation.  (Tr. 37, 377, 380).  Although Plaintiff admitted that he sometimes requires reminders to take his medication, the ALJ noted that the records reflected minor difficulties in this area but further noted that Plaintiff had a high school education and he was capable of basic understanding, remembering, and applying information, as he was able to attend to and receive appropriate medical care for his ongoing conditions.  (Tr. 37, 359, 377).

As for the functional area "interacting with others," the ALJ found that the record overall reflected no more than a mild limitation.  (Tr. 37, 375-381).  The ALJ cited to records that showed Plaintiff appeared in a "good" mood and was "cooperative" at many VA appointments, that at some appointments Plaintiff was "calm" and soft spoken, and that he also displayed "good eye contact." (Tr. 37, 541-1482).  Additionally, the ALJ noted that Plaintiff reported that he spent time with others at church, the store, the library, and other places.  (Tr. 37, 375-81).

In the functioning area of "concentrating, persisting or maintaining pace," the ALJ found that the totality of the evidence supported no more than mild restrictions in this area.  (Tr. 37).  The ALJ stated that several mental status examinations revealed generally unremarkable findings showing Plaintiff's memory was "grossly intact" and that he displayed "fair" or "adequate" insight, judgment, and impulse control.  (Tr. 37).  The ALJ noted that there were times where Plaintiff was paranoid due to alcohol and marijuana abuse and that he reported having some difficulty with his memory and concentration, but the ALJ also noted that Plaintiff stated that he was able to pay attention and finish things he started and that he took medication to help him with his stress.

(Tr. 37, 376-81, 541-1482).

As to the last functional area, "adapting or managing oneself," the ALJ found that Plaintiff had a mild limitation. (Tr. 37). Noting that the record revealed instances where Plaintiff was homeless and used substances, the ALJ found that even though he had some problems related to these times, he reported that he was able to attend doctor appointments, take medication, care for his own personal needs, prepare simple meals, do light household chores, and shop in stores. (Tr. 37, 375-81, 541-1757).

Upon considering Plaintiff's subjective statements, the ALJ concluded that they were inconsistent with the record because Plaintiff's symptoms were intermittent in nature and treated effectively with medication, medical care, and time. (Tr. 37).

Additionally, pursuant to 20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c), the ALJ considered the prior administrative medical findings[8] in determining whether Plaintiff proved he had severe impairments during the relevant period. (Tr. 41). The ALJ noted that State agency physician Dr. Richard Ellis and State agency psychiatrist Dr. Robert Estock reviewed the record

---

[8] The revised regulations define "prior administrative findings" as follows:

> A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
> (i) The existence and severity of your impairment(s);
> (ii) The existence and severity of your symptoms;
> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
> (iv) Your residual functional capacity;
> (v) Whether your impairment(s) meets the duration requirement; and
> (vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

before it was complete.  (Tr. 41).  The ALJ stated that the doctors determined that Plaintiff had severe impairments but found insufficient evidence to make an assessment with respect to the Title II portion of Plaintiff's claim.  (Tr. 41, 59-68).  The ALJ found "their assessment that the evidence was insufficient for the Title II portion, persuasive, as the claimant was uninsured at the time and his impairments were not severe until April 13, 2017."  (Tr. 41).

Because of the mild diagnostic test results, the conservative treatment, and the prior administrative medical findings, there is substantial evidence supporting the ALJ's determination that Plaintiff's impairments were not severe through his date last insured of June 30, 1992.  *See Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677 (11th Cir. 2020) ("The 'type, dosage, effectiveness, and side effects' of medication taken to alleviate pain or other symptoms may be taken into account when evaluating subjective symptoms.") (citing 20 C.F.R. § 404.1529(c) (3)(iv)); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (recognizing that a physician's conservative medical treatment for a particular condition may negate a claim of disability); *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863-64 (11th Cir. 2017) (finding that a conservative treatment regimen for a plaintiff's mental and physical impairments supported the ALJ's finding that the plaintiff's subjective complaints were inconsistent with the medical evidence: "ALJs are permitted to consider the type of a treatment a claimant received in assessing the credibility of her subjective complaints."); *Gonzalez v. Kijakazi*, No. 8:20-CV-1325, 2021 WL 4167689, at *4 (M.D. Fla. Sept. 14, 2021) (finding that conservative treatment for both plaintiff's mental and physical impairments supported the ALJ's finding that plaintiff's subjective complaints were not as severe as alleged and did not support a finding of disability); *Contreras-Zambrano v. Soc. Sec. Administration, Comm'r*, No. 4:15-CV-00889, 2017 WL 1196925, at *5 (N.D. Ala. Mar. 31, 2017), *aff'd sub nom. Contreras-Zambrano v. Soc. Sec. Admin., Comm'r*, 724 F. App'x

700 (11th Cir. 2018) (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("'If an impairment can be controlled by treatment or medication, it cannot be considered disabling'")).

Plaintiff presumably argues that the ALJ erred in finding that he did not have a severe impairment from his alleged onset date of April 30, 1990 through his date last insured of June 30, 1992 and submits in support a one-page document from Dr. Veronice Gardner, who Plaintiff says found him unemployable on May 6, 2016. (Doc. 1 at p. 1; Doc. 18 at p. 1). The single-page document appears to be page ten of a "Back Conditions Disability Benefits Questionnaire," entitled "Section XVI-Functional Impact," signed by Dr. Gardner, a general practitioner, on May 6, 2016. (Tr. 8, 306, 426, 466, 511, 1776, 1779). However, documents from the VA summarize Dr. Gardner's full report. (Tr. 430-31, 495). According to the VA documents, Dr. Gardner evaluated Plaintiff on April 28, 2016 and diagnosed him with myofascial back pain syndrome and lumbar disc disease. (Tr. 495). Dr. Gardner indicated that the February 3, 2016 x-ray report demonstrated that Plaintiff had a motor vehicle accident and that his lumbar disc disease was unrelated to his myofascial back pain syndrome. (Tr. 495). Range of motion of the lumbar spine was 60 degrees forward flexion, 30 degrees extension, and 30 degrees bilateral lateral flexion and bilateral lateral rotation. (Tr. 495). There was no muscle spasm or guarding; there was localized tenderness, but it did not result in abnormal gait or abnormal spinal contour; sensory examination was normal and straight leg raising test results were negative; he had no radicular pain or any other signs or symptoms due to radiculopathy; and after range of motion x 3 forward flexion improved to 70 degrees. (Tr. 495).

Dr. Gardner check-marked that Plaintiff's thoracolumbar spine impacted his ability to work but did not elaborate as to the degree of impact. (Tr. 1776). Dr. Gardner expressly stated that the myofascial back pain syndrome does not preclude obtaining and maintaining gainful employment

of a sedentary and light physical nature. (Tr. 1776). Dr. Gardner explained that unless myofascial pain syndrome is associated with other more complicated diagnoses, there is typically no need for restrictions or accommodations of job duties. (Tr. 1776). Dr. Gardner further stated that, occasionally, those with myofascial pain syndrome benefit from minor modification in the workplace to prevent reoccurrence if the condition is associated with a muscular repetitive strain etiology. (Tr. 1776). Dr. Gardner indicated that ergonomic assessment of the computer workstations may be helpful and that individuals who perform repeated bending and lifting tasks should be educated on proper body mechanics. (Tr. 1776).

Dr. Gardner's vague opinion lacks any specifics as to how or to what extent Plaintiff's thoracolumbar spine condition impacted his ability to work. Moreover, there is no evidence that Dr. Gardner was referring to back pain and limitations during the relevant period—from the alleged onset date of April 30, 1990 through his date last insured of June 30, 1992—or even reviewed prior evidence from the relevant period. Dr. Gardner does not cite any medical findings from that period or indicate that she had been treating Plaintiff since that time. Because it references only Plaintiff's February 2016 motor vehicle accident, the February 2016 x-ray, and Dr. Gardner's April 2016 examination findings, the 2016 opinion does not appear to be based on Plaintiff's physical condition within the time period at issue in this case. Dr. Gardner's opinion is therefore not retrospective or germane to whether Plaintiff had a severe impairment during the relevant period. *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) ("[A]lthough Bullard presented medical evidence of impairment after June 30, 1998, there was no reasonable basis to conclude that this evidence related back to his previous disability claim."); *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 14 (11th Cir. 2012) (finding that the opinion evidence from after the date last insured did "not appear to be based upon [plaintiff's]

mental and physical conditions within the time period at issue … these opinions were not particularly relevant to whether [plaintiff] was disabled for purposes of DIB."); *Jones v. Colvin*, No. 3:15-v-208, 2015 WL 9694507, at *6 (M.D. Fla. Dec. 15, 2015) ("[O]pinions rendered after Plaintiff's date of last insured are of little value to the ALJ's disability determination....").

Further, even if Dr. Gardner had opined that Plaintiff's condition was severe from 1990 through his date last insured, Plaintiff did not submit any corroborating evidence from the relevant time period.  The ALJ extensively discussed the medical evidence in the record concerning Plaintiff's back impairment that showed his back pain to be mild or controlled with medication until April 2017 when his condition worsened.  Thus, Plaintiff cannot show any harmful error by the ALJ.  *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) ("Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."); *Bullard v. Comm'r of Soc. Sec.*, No. 6:19-CV-143, 2020 WL 1243247, at *4 (M.D. Fla. Mar. 16, 2020) (finding that the ALJ had good cause to discount the medical opinion as there was no contemporaneous evidence corroborating the opinion, which was rendered four years after the expiration of the relevant time period and was based solely on reports and examinations that post-dated the relevant period).

"The claimant bears the burden of proving that [he] is disabled, and, thus, is responsible for producing evidence to support h[is] claim." *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (citing *Ellison*, 355 F.3d at 1276).  Plaintiff has not met that burden here. Rather, because it is based upon the proper legal standards and supported by substantial evidence, the Commissioner's decision is due to be affirmed.

**B.      Additional Evidence Submitted to the Appeals Council**

Evidence is properly presented to the Appeal Council if it is "new [and] material," and it "relates to the period on or before the date of the hearing decision."  20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5); *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)); *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) ("[T]he Appeals Council 'must consider new, material, and chronologically relevant evidence' that the claimant submits."). The Appeals Council must review a case if properly presented new evidence shows that "there is a reasonable probability that the additional evidence would change the outcome of the decision."  *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).  However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence would not change the ALJ's decision."  *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 784-85 (11th Cir. 2014)).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007).  A court considers evidence submitted to the Appeals Council with the whole record to determine whether substantial evidence supports the ALJ's decision.  *Id*. at 1266-67.  "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram*, 496 F.3d at 1262.

The additional evidence submitted by Plaintiff is comprised of two of the thirteen pages from Nurse Practitioner David Graham's "Back Condition Benefits Questionnaire" dated June 8, 2019 (Tr. 512-13, 524, 537), which was submitted to the Appeals Council after the ALJ's decision.  However, such evidence is not new, material, or related to the relevant period.

First, Graham indicated that Plaintiff had significant diagnostic test findings or results from a lumbar x-ray dated May 2017 and an October 2017 MRI.  (Tr. 513, 524, 537).  The ALJ considered the same tests in finding that Plaintiff became disabled as of April 13, 2017.  (Tr. 40). The evidence thus is not new.

Second, the evidence is not material.  Graham opined that Plaintiff's back condition impacted his ability to work, causing him difficulty with sitting, standing, walking for long periods of time, and bending over and lifting objects (Tr. 513); and the ALJ similarly determined that, as of April 13, 2017, Plaintiff was limited in lifting, sitting, standing, and walking for long periods by restricting Plaintiff to light work.  (Tr. 39).  The ALJ also limited Plaintiff to occasional stooping.  (Tr. 39).

Finally, the evidence does not relate to the relevant period.  There is no evidence that Graham was referring to back pain from the 1990s, and there is no indication that he reviewed prior evidence from the relevant period—as he does not cite any medical findings from that period or indicate that he had been treating Plaintiff since that time.

The administrative record makes clear that the Appeals Council accepted the additional evidence but found that it did not present a basis for changing the outcome of the ALJ's decision. (Tr. 21, 24-25).  The court is in agreement that it would not be reasonably probable that the additional evidence, when considered with the record as a whole, would change the outcome of the ALJ's decision.

### C.   Miscellaneous Motions

Plaintiff's Motion for Summary Judgment (Doc. 19) was not a properly filed document, as it does not comport with the court's previous scheduling order (Doc. 6).  In any event, Plaintiff essentially states the same arguments as he does in his complaint (Doc. 1) and brief (Doc. 18), which have been addressed above.  Thus, Plaintiff's Motion for Summary Judgment is due to be denied.

In his Motion to Amend (Doc. 22), Plaintiff submitted for inclusion various documents (Doc. 22-1) that were also attached to his complaint (Doc. 1-1).  Because the documents are already in the record (Tr. 41-42, 511-13, 524, 537) and have been considered, Plaintiff's Motion to Amend is due to be denied as moot.

As to his Motion to Compel (Doc. 25), Plaintiff requests that the court not allow the Commissioner "any extra time to file a response" and to grant all benefits sought.  (*Id.*).  Because the court has affirmed the Commissioner's decision, the Motion to Compel is due to be denied.

Lastly, Plaintiff has filed two motions styled as requests for default judgment.  Plaintiff's first Motion for Default Judgment (Doc. 27) asserts that the Commissioner failed to respond to the Motion to Compel within 14 days.  Because the Commissioner was not required to file a response, the first Motion for Default Judgment (Doc. 27) is denied.  Plaintiff also filed a subsequent Motion for Default Judgment (Doc. 28) on the allegations that "over 365 days [have] lapse[d] for [the court] to answer a motion to amend, no answer has been rendered."  The court construes the motion as one to ascertain the case status.  Given the disposition of this action as set out above, the second Motion for Default Judgment (Doc. 28) is due to be denied.

## V.      Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.   A separate judgment will issue.

**DONE** this the 29th day of March 2023.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**